# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**IZELL BROWN, JR.,**

       **Plaintiff,**

   **v.**
                          **Civil Action 2:18-cv-569**
                              **Judge George C. Smith**
                              **Magistrate Judge Chelsey M. Vascura**

**T. FRANCIS VENABLE,**

       **Defendant.**


## REPORT AND RECOMMENDATION

Plaintiff, Izell Brown, Jr. ("Plaintiff"), an Ohio state prison inmate, brings this action under 42 U.S.C. § 1983 against Defendant Travis Venable,[1] a Captain at the Madison Correctional Institution, for use of excessive force in violation of the Eighth Amendment. Both parties have moved for summary judgment. (ECF Nos. 40, 49.) For the reasons that follow, it is **RECOMMENDED** that both Motions for Summary Judgment be **DENIED**.

## I.      BACKGROUND

The initial facts are undisputed. On April 9, 2018, Plaintiff was under "constant watch" in the Madison Correctional Institution's infirmary as a result of self-injurious behavior. That morning, Plaintiff began banging his head against the door of his cell. After he refused orders to stop, Corrections Officer Floyd Detty sprayed Plaintiff with oleoresin capsicum ("OC" or pepper spray), but the spray missed Plaintiff's face. Plaintiff was then escorted from his cell to the

---

[1] Although Plaintiff named "T. Francis Venable" as the defendant, Mr. Venable states that his name is Travis Venable and that "Francis" is not part of his name. (Def.'s Mot. for Summ. J. 1, ECF No. 49.)

infirmary treatment room by Officer Detty, Captain Venable, and Corrections Officer Ahmed Camara. Plaintiff was decontaminated from the OC spray but otherwise refused medical treatment. Plaintiff was then escorted back to his cell. (*See* Pl.'s Dep. 12–17, ECF No. 51; Detty Dec. 2, ECF No. 49, PAGEID #283; Camara Dec. 2, ECF No. 49, PAGEID #279; Venable Dec. 3, ECF No. 49, PAGEID #273.) Plaintiff does not challenge the use of force in connection with the OC spray or the subsequent escort to and from the treatment room.

After returning to his cell, Plaintiff admits he began smearing feces on the door of his cell, which obstructed the officers' view. Captain Venable then ordered Officer Detty to access the door. (Pl.'s Dep. 17–18, ECF No. 51.) From here, the parties' accounts diverge.

## A.    Plaintiff's Account of the Force in Question

According to Plaintiff, only Detty entered his cell and, although Plaintiff initially refused to offer his hands for cuffing, he gave no physical resistance and Detty was able to handcuff him without any use of force. (*Id.* at 18–19.) Venable, Detty, and Camara then escorted him back to the infirmary treatment room. During the walk back to the treatment room, Plaintiff contends that Captain Venable made verbal threats to him, stating that "[Venable was] tired of dealing with [Plaintiff]" and that "[Venable] wished that [Plaintiff would] do something to give [Venable] a reason to do—to pound [Plaintiff's] face in." (*Id.* at 20–21.) Plaintiff did not say anything threatening to Venable in response, but Plaintiff admits he was trying to pull away from Venable and asked for a different supervisor to be present. (*Id.*)

After arriving back in the treatment room, Captain Venable ordered Plaintiff to sit down in a chair. Plaintiff verbally refused: "I told him fuck off, I'm not sitting down in that chair." (*Id.* at 22.) After he refused three orders to sit down, Plaintiff asserts that Captain Venable punched him in the face. (*Id.* at 23.) Plaintiff reports that he lost consciousness for a few seconds, but was still standing when he regained consciousness. (*Id.* at 23–24.) After that,

Captain Venable "took [Plaintiff] to the ground, but he lift[ed Plaintiff] right back up." (*Id.* at 24.) Plaintiff believes Captain Venable used a front-leg sweep to bring him close to the ground, but that Plaintiff never actually hit the ground because Captain Venable was still holding onto Plaintiff's arm. (*Id.* at 25–26.) After the leg sweep, Captain Venable once again told Plaintiff to sit in the chair, and this time Plaintiff complied. (*Id.* at 26–27.) At this point, Plaintiff admits to making "multiple threats" to Captain Venable, saying he was going to spit on him, but not otherwise threatening physical harm. (*Id.* at 27–28.) Gary Trentman, a nurse, was also in the treatment room at the time Plaintiff alleges the punch occurred. At his deposition, Plaintiff stated, "Trentman seen it. And at that time [Venable] was telling me, He's [Trentman's] on our side, laughing at me, and Trentman is saying in response, That's right, buddy. That's right, buddy." (*Id.* at 53.) The officers requested a spit sock to prevent Plaintiff from spitting on anyone; according to Plaintiff, he sat in the chair in the treatment room for approximately ten minutes until the spit sock was obtained and did not spit or attempt to spit during that time. (*Id.* at 54.) Although Plaintiff's eye was swollen and his lip was bloody, Plaintiff refused medical treatment and was taken back to his cell. (*Id.* at 32, 42.) The injury to Plaintiff's eye took approximately one month to fully heal, and his lip healed in less time than that. (*Id.* at 44.)

**B.    Officers' Account of the Force in Question**

In contrast to Plaintiff's account, the officers report physical resistance from Plaintiff throughout the second escort to the treatment room. After Officer Detty opened the door to Plaintiff's cell, Detty, Camara, and Venable state one cuff was placed on one of Plaintiff's wrists, at which point Plaintiff stated that he was not going to let the officers cuff him, and began jerking roughly away from the officers. (Detty Dec. 3, ECF No. 49, PAGEID #284.) Detty then gained control of Plaintiff's left arm, while Venable gained control of Plaintiff's right arm, allowing the officers to handcuff him. (*Id.*) During the walk to the treatment room, Plaintiff

repeatedly cursed at Venable and threatened to spit on him and bite him. (*Id.*; Venable Dec. 3, ECF No. 49, PAGEID #273; Camara Dec. 3, ECF No. 49, PAGEID #280.) The officers had to hold their hands between Plaintiff and Venable's face to block any spitting attempts. (*Id.*) Plaintiff also repeatedly tried to bang his head against the hallway wall. (*Id.*)

After arriving in the treatment room, Plaintiff refused Venable's orders to sit down. (Venable Dec. 3–4, ECF No. 49, PAGEID #273.) Instead, Plaintiff kicked over a chair and then attempted to kick Venable. (*Id.*; Camara Dec. 3, ECF No. 49, PAGEID #280.) Plaintiff also continued cursing at Venable and threatening to "spit in [Venable's] bitch ass face." (Venable Dec. 3–4, ECF No. 49, PAGEID #273–74.) Venable then performed a front-leg sweep to take Plaintiff to the ground. (*Id.*; Camara Dec. 3, ECF No. 49, PAGEID #280.) Venable was able to regain control of Plaintiff and Plaintiff sat down in the chair. (*Id.*) Because Plaintiff kept threatening to spit, Venable requested a spit sock. (*Id.*) Plaintiff refused medical treatment and was escorted back to his cell. (*Id.*) At that point, Venable observed "slight swelling to [Plaintiff's] right eye and cheek, and a small amount of blood in his mouth." (Venable Dec. 4, ECF No. 49, PAGEID #274.)

## C.     The Present Motions

After initial screening under 28 U.S.C. § 1915A, the Court dismissed all of Plaintiff's claims except for his claim for excessive force in violation of the Eighth Amendment against Captain Venable arising out of the alleged punch to Plaintiff's face. (ECF No. 4, 14.) Both Plaintiff and Venable have moved for summary judgment.

## II.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial

burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citation omitted). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

## III.    ANALYSIS

### A.    Eighth Amendment Standards

The Eighth Amendment prohibits the unnecessary and wanton infliction of pain against prisoners. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (citing *Whitley v. Albers,* 475 U.S. 312, 319 (1986)). To make out a claim under the Eighth Amendment, the prisoner must

satisfy both an objective and a subjective component. *Id.* (citing *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir.1993)).

The objective component requires the pain inflicted to be "sufficiently serious." *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). Yet the seriousness of the injuries is not by itself dispositive. *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010) (per curiam). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson,* 503 U.S. at 9. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

The subjective component focuses on the state of mind of the prison officials. *Williams*, 631 F.3d at 383. The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 449 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7).

**B.        Plaintiff's Motion for Summary Judgment**

Plaintiff's Motion is short and devoid of argument other than that Venable's closed-fist strike to Plaintiff's face while he was restrained "is inappropriate supervision and is outside the scope of his duties." (Pl.'s Suppl. Mem. 1–2, ECF No. 48.) But more importantly, the record is replete with issues of material fact. Making all reasonable inferences in favor of Venable, as the Court must when considering Plaintiff's Motion, a jury could easily find based on the testimony of three officers present that Venable did not even punch Plaintiff. And Plaintiff has not complained of any excessive force other than the alleged punch. Therefore, because a genuine issue of fact exists as to whether the force in question actually occurred, Plaintiff is not entitled to summary judgment.

## C.     Venable's Motion for Summary Judgment

Venable makes several arguments as to why he is entitled to summary judgment:

(1) Plaintiff failed to exhaust administrative remedies through the prison grievance system;

(2) Venable's account of the incident in question is more credible than Plaintiff's, and his actions

did not violate the Eighth Amendment; (3) Plaintiff's injuries were *de minimis*; and (4) Venable

is entitled to qualified immunity.  The Court will consider each argument in turn.

### 1.     Plaintiff fully exhausted his administrative remedies.

Before commencing an action under 42 U.S.C. § 1983, prisoners are required to exhaust

administrative remedies by the the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA").

As the Sixth Circuit Court of Appeals has explained:

> The Prison Litigation Reform Act requires state prisoners to follow and exhaust all
> applicable state grievance procedures before filing suit in federal court.  *See* 42
> U.S.C. 1997e(a); *Woodford v. Ngo*, 548 U.S. 82, 90 [ ] (2006).  This requirement is
> not jurisdictional; rather, exhaustion is an affirmative defense that must be pleaded
> and proved by the defendants. *Jones* [*v. Bock*], 549 U.S. [199,] 212 [(2007)].  When
> the defendants in prisoner civil rights litigation move for summary judgment on
> administrative exhaustion grounds, they must prove that no reasonable jury could
> find that the plaintiff exhausted his administrative remedies.  *Surles v. Andison*, 678
> F.3d 452, 455-56 (6th Cir. 2012).
>
> There is no uniform federal exhaustion standard. A prisoner exhausts his remedies
> when he complies with the grievance procedures put forward by his correctional
> institution. *Jones*, 549 U.S. at 217-19[ ].  "This court requires an inmate to make
> 'affirmative efforts to comply with the administrative procedures,' and analyzes
> whether 'those efforts to exhaust were sufficient under the circumstances.'" *Risher*
> [*v. Lappin*], 639 F.3d [236,] 240 [(6th Cir. 2011)] (quoting *Napier v Laurel Cty.*,
> 636 F.3d 218, 224 (6th Cir. 2011)).

*Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017).

The purpose of the exhaustion requirement "'is to allow prison officials 'a fair

opportunity' to address grievances on the merits, to correct prison errors that can and should be

corrected and to create an administrative record for those disputes that eventually end up in

court.'"  *Id.* at 591 (quoting *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010)).

The United States Court of Appeals for the Sixth Circuit has therefore held that "[a]n exception to this [exhaustion requirement] is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits." *Mattox*, 851 F.3d at 591 (citation omitted).

In Ohio, the inmate grievance procedures are set forth in Ohio Administrative Code § 5120–9–31. This regulation creates a three-step process governing requests by inmates for relief "regarding any aspect of institutional life that directly and personally affects the [inmate]." O.A.C. § 5120-9-31(A), (J). The first step requires an inmate to "file an informal complaint to the direct supervisor of the staff member, or department most directly responsible for the particular subject matter of the complaint." O.A.C. § 5120-9-31(J)(1). If the inmate is dissatisfied with the result, he may file a formal grievance with the inspector of institutional services at his institution. O.A.C. § 5120-9-31(J)(2). If an inmate remains dissatisfied, he may file an appeal to the office of the chief inspector. O.A.C. § 5120-9-31(J)(3). An inmate has not exhausted his remedies under § 5120-9-31 until he has received a decision on his appeal to the office of the chief inspector. *Younker v. Ohio State Univ. Med. Ctr.*, No. 2:11-cv-00749, 2013 WL 3222902, at *4 (S.D. Ohio June 25, 2013).

Here, Venable argues that Plaintiff failed to comply with Ohio's three-step process because his initial informal complaint was filed outside the 14-day deadline established by O.A.C. § 5120-9-31(J)(1). Plaintiff remained on constant watch until April 10, 2018, during which time he was unable to file a complaint; therefore, his deadline to file a complaint related to the use of force on April 9, 2018, was April 24, 2018. However, Plaintiff did not file his initial complaint until April 29, 2018. (Summary of Grievance Process, ECF No. 49, PAGEID #276–77.) Although Defendant is correct that Plaintiff was five days late in filing his initial complaint,

8

the record also reflects that the prison nevertheless accepted Plaintiff's complaint and issued a decision, which Plaintiff appealed to the inspector and chief inspector. (*Id.*) He received a final decision denying his grievance from the office of the chief inspector on August 18, 2018. (*Id.*) Because prison officials rendered a final decision that addressed the merits of Plaintiff's grievance, the undersigned recommends that the Court deem the exhaustion defense waived and find that Plaintiff fully exhausted his administrative remedies before commencing this suit. *See Mattox*, 851 F.3d at 590-91; *see also Reed-Bey*, 603 F.3d at 325 ("We instead conclude that [the plaintiff] properly exhausted his claim because he invoked one complete round of the Department's grievance procedures and received merits-based responses at each step.").

The case law cited by Venable does persuade the undersigned to reach a different conclusion. In *Woodford v. Ngo*, the United States Supreme Court held that exhaustion under the PLRA requires inmates to comply with administrative deadlines. 548 U.S. 81, 90 (2006). However, in that case, the inmate's late-filed complaint was rejected by the prison as untimely at the first step of the administrative process. *Id.* at 87. *Woodford* does not suggest that a late-filed complaint *accepted* by the prison and escalated through all levels of the administrative process represents a failure to exhaust. And the other two cases Venable cites held that the prisons in question did not carry their burden to establish a failure to exhaust administrative remedies. *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011); *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012). Accordingly, Plaintiff's suit is not barred by the PLRA's exhaustion requirement.

### 2. The Court may not assess credibility on summary judgment.

Venable asks the Court to find no Eighth Amendment violation based on his version of the facts, in which Venable never punched Plaintiff and at most used a front-leg sweep to bring Plaintiff to the ground. Venable argues that the Court should accept his version of the facts

because it is corroborated by testimonial and documentary evidence, and Plaintiff's account lacks credibility.  (Def.'s Mot. for Summ. J. 7–17, ECF No. 49.)

However, "[i]n reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited.  Rather, the evidence should be viewed in the light most favorable to the non-moving party."  *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005).  In fact, "[i]t is an error for the district court to resolve credibility issues against the nonmovant: 'In effect, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  The district court errs by granting summary judgment for the defendant where issues of credibility are determinative of the case.'"  *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008) (quoting *Ctr. for Bio–Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 820 (6th Cir. 2007)).

Because the record contains conflicting evidence as to what actually occurred on April 9, 2018, the Court may not simply accept Venable's account and grant judgment in his favor.  The factual disputes must be left for resolution by a jury.  Accordingly, Venable is not entitled to summary judgment merely because he might not be liable under his own version of the facts.

### 3.    The severity of Plaintiff's injuries is not dispositive.

Venable argues that because Plaintiff's injuries were not severe, any force used by prison officials in inflicting them cannot have been excessive for Eighth Amendment purposes.  Although Plaintiff admits he suffered no long-term injuries from the alleged punch and was treated only with ibuprofen (Pl.'s Dep. 43, ECF No. 51), the severity of Plaintiff's injuries is not dispositive for Eighth Amendment purposes.  *Cordell v. McKinney*, 759 F.3d 573, 580–81 (6th Cir. 2014).  "Injury and force [ ] are only imperfectly correlated, and it is the latter that ultimately counts.  An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without

serious injury." *Wilkins*, 559 U.S. at 38. Accordingly, the United States Supreme Court has held

it is error to dismiss a claim for excessive force under the Eighth Amendment based on the *de*

*minimis* nature of the plaintiff's injuries. *Id.* at 40. Therefore, the relatively non-serious nature

of Plaintiff's injuries does not justify summary judgment in favor of Venable.

###### 4.     Venable is not entitled to qualified immunity.

Under the doctrine of qualified immunity, "'government officials performing

discretionary functions generally are shielded from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known.'" *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th

Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Reichle v.*

*Howards*, 566 U.S. 658, 664 (2012). "[Q]ualified immunity applies irrespective of whether the

official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions

of law and fact." *Hall v. Sweet*, 666 F. App'x 469, 477–78 (6th Cir. 2016) (citing *Pearson v.*

*Callahan* 555 U.S. 223, 231 (2009)). In determining whether an official is entitled to qualified

immunity, "we ask two questions: 'First, viewing the facts in the light most favorable to the

plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the

right clearly established at the time of the violation?'" *Mitchell v. Schlabach*, 864 F.3d 416, 420

(6th Cir. 2017) (quoting *Miller v. Sanilac County*, 606 F.3d 240, 247 (6th Cir. 2010)).

Venable argues that he is entitled to qualified immunity because Plaintiff cannot

demonstrate that Venable violated Plaintiff's Eighth Amendment rights. According to Venable,

even if the Court were to accept Plaintiff's version of the facts and assume he punched Plaintiff

in the face, "such an action would have been 'applied in a good faith effort to maintain or restore

discipline' and not done 'maliciously and sadistically for the very purpose of causing harm'" as

required for an Eighth Amendment violation.  (Def.'s Mot. for Summ. J. 22, ECF No. 49 (quoting *Smith v. Winkle*, No. 2:13-cv-784, 2014 WL 1796063 *2 (S.D. Ohio, May 6, 2014)).

The undersigned disagrees.  Plaintiff testified at his deposition that although he verbally resisted Venable's orders to sit down in the treatment room, his hands were cuffed behind his back and he offered no physical resistance prior to Venable's punch to Plaintiff's face.  (Pl.'s Dep. 22–23.)  Minimal or lack of physical resistance counsels against the use of force.  *See, e.g.*, *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988) (need for the application of force was "nonexistent" when arrestee was handcuffed and not trying to escape or hurt anyone); *Griffin v. Hardrick*, 604 F.3d 949, 956 (6th Cir. 2010) (describing the need for use of a leg sweep to contain an inmate who was struggling against two officers as "a close case").  Plaintiff further testified that the punch was strong enough that he lost consciousness for several seconds, and the injury to his eye took approximately a month to fully heal.  (*Id.* at 23–24, 44.)  Further, Plaintiff testified that Venable taunted him before and after the punch, expressing a hope that Plaintiff would give Venable a reason to "pound [Plaintiff's] face in" and asserting that a nurse who witnessed the punch was "on [Venable's] side."  (*Id.* at 20–21, 53.)  These remarks suggest that the force was not applied in good faith.  *See Hublick v. Cty. of Otsego*, No. 12-CV-14146, 2014 WL 495403, at *6 (E.D. Mich. Feb. 6, 2014) (officer's threat to inmate to "light him up" if he continued to passively resist could give rise to an inference of maliciousness).

Accepting Plaintiff's version of the facts, a jury could conclude that the force in question was sufficiently serious, and that Venable's state of mind was sufficiently malicious, to satisfy the both the objective and subjective components of the Eighth Amendment analysis.  Moreover, it has long been clearly established that prisoners have the right to be free of excessive force.  *Kostrzewa v. City of Troy*, 247 F.3d 633, 641 (6th Cir. 2001) ("This circuit has held that the right

to be free from excessive force . . . is a clearly established right for purposes of the qualified immunity analysis.").  As a result, Venable is not entitled to qualified immunity.

In sum, Venable has failed to demonstrate an absence of genuine issues of material fact or his entitlement to judgment as a matter of law.  His summary judgment motion must therefore be denied.

## IV.    DISPOSITION

For the foregoing reasons, it is **RECOMMENDED** that both Plaintiff's Motion for Summary Judgment (ECF No. 40) and Venable's Motion for Summary Judgment (ECF No. 49) be **DENIED**.

## V.    PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).   A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

_/s/ Chelsey M. Vascura_
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE